IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PAULETTE HARRIS  \*
\*
v.   \*   Civil No. JFM-04-1992
\*
CREATIVE HAIRDRESSERS, INC.   \*
\*\*\*\*\*

MEMORANDUM

Paulette Harris has brought this action against Creative Hairdressers, Inc., d/b/a Hair Cuttery, asserting a claim for race discrimination under 42 U.S.C. § 1981 and a claim for negligent hiring and retention under Maryland law. Her claims arise out of an incident that occurred when she visited the Governor's Plaza Hair Cuttery in Glen Burnie, Maryland on March 11, 2004.[1] Discovery has been completed, and defendant has filed a motion for summary judgment. The motion will be granted.

I.

On the morning of March 11, 2004, plaintiff entered the Governor's Plaza salon accompanied by her minor daughter.[2] She had previously sought and received service at the salon approximately 50 times without incident. When she entered the salon on March 11th, plaintiff alleges that she approached Theresa Heid, a licensed cosmetologist, whom plaintiff asserts was sweeping the floor at the time. According to plaintiff, Heid asked, "What are you

---

[1] Plaintiff worked at Hair Cuttery's Beltway Plaza salon from October 2001 through February 2002. Her employment was terminated for insubordination. She filed an EEOC charge alleging race discrimination as to her discharge. The EEOC issued a no cause finding.

[2] Defendant's witnesses dispute plaintiff's recitation of the facts in many respects. However, because the evidence must be considered in the light most favorable to plaintiff in deciding defendant's summary judgment motion, I have stated the facts as they are alleged by plaintiff.

having done today?" Plaintiff responded "shampoo, blow dry."

Heid entered plaintiff's name into the salon's computer. Stephanie Pollard, another licensed cosmetologist and the next available stylist, then came over and said, "Are you aware that it is $21.00 for a shampoo and blow dry for you?"[3] Plaintiff responded "No" and went on to say "That ridiculous, most of the time I pay $13.00."

According to plaintiff, the following exchange then occurred:

**Pollard**: "It's because you are ethnic."

**Plaintiff**: "Is it because I have ethnic hair?"

**Pollard**: "No, you heard me, it's because you are ethnic."

**Plaintiff**: "I am not paying $21.00 for something that I normally pay $13.00 for."

**Pollard**: [After writing $21.00 on a receipt]: This is what you are going to pay or you can get out."

**Plaintiff**: "No I am going to call home office."

Pollard wrote down the name of the company headquarters, and plaintiff placed a call to the headquarters on her cell phone. According to plaintiff, during the ensuing conversation a customer service representative, Ruby, apologized to plaintiff, and informed her she could not be told to leave the store. Ruby went on to say that she would immediately call the store and direct

---

[3] The provenance of the dispute between plaintiff and Pollard as to the amount that plaintiff was to be charged lies in the surcharges listed in the Salon's price book. While $13.00 is charged for the "shampoo and blow dry service," $21.00 is charged for "blow dry straightening." As a former employee of a Hair Cuttery salon, plaintiff was aware of this difference. She also acknowledged that the $21.00 is charged to all customers, regardless of their race, who need the "blow dry straightening" service.
The reason for the $8.00 surcharge is that hair straightening is more labor intensive. Again, plaintiff acknowledges this fact. She asserts, however, that she was wearing her hair straight on March 11th and did not require the straightening service.

that plaintiff receive a shampoo and blow dry service for the $13.00 price requested by plaintiff. Ruby then telephoned Heid on the store phone, and as a result of the call Heid told plaintiff she would provide the requested service for $13.00.

Plaintiff asserts that Pollard then said to Heid; "make sure you let her know that she's going to have to pay up front because you people got a bad habit of getting services done and not paying them before you leave." Despite this remark, Heid shampooed and blew dry plaintiff's hair without demanding prepayment. However, plaintiff alleges that Heid took another customer before providing service to her. After receiving her treatment, plaintiff paid the $13.00 fee, plus a $5.00 tip to Heid.

Upon leaving the salon, plaintiff immediately called her attorney. She also called back Ruby to complain that she had been asked to pay the $13.00 in advance. Later that day, Gail Logue, defendant's Maryland regional manager, telephoned plaintiff and apologized to her, offering to do whatever was necessary to rectify the situation. Plaintiff, however, refused the offer.

## II.

Maryland recognizes that an employer has an obligation to the public to use due care in selecting and retaining only competent and careful employees. *Henley v. Prince George's County*, 479 A.2d 1375, 1382 (Md. 1984), *aff'd in relevant part*, 503 A.2d 1333 (1986). However, "[t]here is a rebuttable presumption that an employer use[d] due care in hiring an employee." *E.g., Bryant v. Better Bus. Bureau of Greater Maryland*, 923 F. Supp. 720, 751 (D. Md. 1996) (quoting *Evans v. Morsell*, 395 A.2d 480, 483 (Md. 1978)); *see also Horridge v. St. Mary's County Dep't of Social Serv.*, 854 A.2d 1232, 1238 (Md. 2004) (evidence of licenses

suggests a minimum of professional competence).  To maintain a cause of action for negligent hiring/retention, plaintiff must establish: (1) that the individual was employed by defendant employer, (2) that individual employee was incompetent, (3) defendant employer had actual or constructive knowledge of that incompetence, (4) an individual employee's act or omission caused the plaintiff's injury, and (5) that defendant employer's negligence in hiring or retaining individual was the proximate cause of the plaintiff's injury.  *McGuiness v. Brink's Inc*., 60 F. Supp. 2d 496, 501 (D. Md. 1999).

In this case it is undisputed that Heid and Pollard, about whose actions plaintiff complains, were employed by defendant.  Thus, plaintiff has established the first of these five elements.  Her proof, however, is otherwise lacking.

According to plaintiff, Pollard and Heid were "incompetent" because the former used a "racial epithet," attempted to overcharge her because she was black, and suggested that she be required to pay up front, while the latter passed over her to provide service to another customer first.  Pollard did not use "a racial epithet."  Moreover, although her alleged remarks may be fairly construed as evidencing insensitivity and racial bias, they do not establish her "incompetence."  Likewise, passing over one customer for another (as Heid is alleged to have done) is not proof of incompetence.

In any event, even if Pollard's and Heid's words and actions could be deemed to prove their incompetence, the record is barren of any evidence demonstrating that defendant was aware of any racial prejudice on their part when it hired and retained them in employment.  Defendant has presented uncontradicted evidence that all applicants for employment at the Governor's Plaza salon (including Heid and Pollard) were subjected to behavioral interviews (as well as

4

three technical proficiency interviews) before being hired. Further, it is undisputed that all employees at the Governor's Plaza salon are trained on issues of racial sensitivity by videotape training and warning posters in the back of the salon. Moreover, plaintiff has presented no facts evidencing any prior incident of alleged racial discrimination by Heid, Pollard, or anyone else at the Governor's Plaza salon. Indeed, the record establishes that plaintiff does not even have knowledge of any prior complaint of any act of racial discrimination at the Governor's Plaza salon.[4] Accordingly, plaintiff's claim for negligent hiring/retention fails.

## II.

Although most Section 1981 cases involve employment discrimination claims, the statute covers any alleged discrimination in retail or service contracts. Any person within the United States is entitled to "the full and equal benefit of all laws" when making and enforcing contracts in "every State or Territory," which encompasses all aspects of the contract formation and/or termination process. 42 U.S.C. § 1981(a) & (b). To state a cause of action under Section 1981, a plaintiff must show: (1) he or she is a member of a racial minority; (2) the defendant intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities protected by the statutes. *E.g., Baltimore-Clark v. Kinko's Inc.*, 270 F. Supp. 2d 695, 699 (D. Md. 2003) (citations omitted).

In order to prevail, however, it is necessary that a plaintiff demonstrate that her right to contract has been "impeded, thwarted, or deterred." *Id*. at 699. As stated in *Hampton v. Dillard Department Stores, Inc.*, 247 F.3d 1091, 1118 (10th Cir. 2001), "there must have been

---

[4]Plaintiff does attach to her opposition materials about alleged acts of racial discrimination at other Hair Cuttery salons at other times. However, these materials prove nothing about Pollard, Heid, or any other employee at the Governor's Plaza salon.

interference with the contract beyond the mere expectation of being treated without discrimination while shopping." Otherwise stated, it is not sufficient that a plaintiff merely show that her "enjoyment of the contracting experience" was diminished. *See, e.g., Baltimore-Clark*, 270 F. Supp. 2d at 700. Thus, in *Morris v. Office Max, Inc.*, 89 F.3d 411 (7th Cir. 1996), the court dismissed a Section 1981 claim because the plaintiffs did not lose a contractual interest despite the regrettable nature of the incident that occurred. In that case, defendant's employees, fearing the possibility of shoplifting from two "suspicious" looking African-American customers, summoned the police to the store who interrogated them. *Id.* at 411-12. The court found the allegations insufficient to establish a Section 1981 claim because the plaintiffs entered the store, browsed, and completed a purchase so they did not lose a contractual interest.

Here, viewing the facts most favorable to plaintiff, her right to contract was not "impeded, thwarted, or deterred." Pollard's alleged comments and her perception that Heid passed over her to provide service to another customer may have "diminished her enjoyment of the contracting experience." However, her characterization of Pollard's remarks as a "racial epithet" is overstated, and those remarks do not bring this case within the line of authority establishing that the very expression of a primitive racial slur can impede the formation of a contract in violation of Section 1981. *See, e.g., Eddy v. Waffle House, Inc.*, 335 F. Supp. 2d 693, 699-700 (D.S.C. 2004); *Charity v. Denny's, Inc.*, No. 98-0554, 1999 WL 544687, at *4 (E.D. La. July 26, 1999). Similarly, slow service alone does not constitute a violation of Section 1981. *See, e.g.*, *Bobbitt v. Rage Inc.*, 19 F. Supp. 2d 512, 518-20 (W.D.N.C 1998); *Robertson v. Burger King, Inc.*, 848 F. Supp. 78, 80 (E.D. La. 1994).

Finally, although requiring members of one race, but not another, to make upfront

payment may violate Section 1981, *see, e.g.*, *Bobbitt,* 19 F. Supp. 2d at 518-20; *cf. Washington v. Duty Free Shoppers, Ltd.*, 710 F. Supp. 1288, 1289-90 (N.D. Cal. 1988), here, it is undisputed that plaintiff was not required to prepay (despite Pollard's alleged contrary suggestion).  Thus, the facts that plaintiff did receive a shampoo and blow dry at the $13.00 price she demanded are dispositive and negate her Section 1981 claim.

    A separate order granting defendant's summary judgment motion is being entered herewith.

Date: <u>September 2, 2005</u>     /s/ _____
                                 J. Frederick Motz
                                 United States District Judge